[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
RULING ON MOTION TO OPEN
In this summary process matter, the court signed an injunction on February 26, 1997, apparently the day before an execution of judgment was to be carried out by a sheriff. A review of the file indicates that the action has a return date of February 4, 1997, and that a motion for default judgment for failure to file an appearance was granted by the court on February 11, 1997. The execution was issued by the court on February 21, 1997. No court action was taken by the defendant until the day the temporary injunction was granted.[1]
At a hearing on March 3, 1997, the defendant, with the aid of an interpreter, testified that although he had received the summons and complaint that had been served by the sheriff, he did not file an appearance because he knows no English and does not read, even in Spanish. He made some efforts to have a friend explain things, but the friend couldn't understand the papers, either. He called a legal aid office several times, but the phone was busy; later, when he went to the office in person, he discovered that the office had moved. It was only he received the notice of the impending execution that he found a legal aid lawyer, who then filed the paperwork mentioned above.[2]
In these circumstances, in the context of a summary process case, the motion to open the judgment would, without more, be denied. Though the defendant is at a disadvantage in some ways, he was served with a number of sets of official papers, and, though he made some effort to come to grips with them, he hardly exhausted the available options. I find it somewhat significant that he was able to respond to the notice of impending execution, CT Page 707 when the other papers went unanswered. There was no evidence that anyone tried to mislead the defendant, and there was no evidence that he tried to speak with the housing session clerk's office, where ordinarily a clerk who speaks Spanish is available. In sum, this is not the sort of mistake or accident which is contemplated by § 377 of the Practice Book; ordinarily the motion to open would be denied.
This case is complicated, however, by the allegation in the paperwork supporting the motion to open and the discussion at the hearing on the motion concerning subject matter jurisdiction. The black letter law is that when the issue of subject matter jurisdiction is raised, by the parties or sua sponte, it must be decided before moving on to other issues in the case. See Pet v.Department of Social Services, 207 Conn. 346 (1988); Castro v.Viera, 207 Conn. 420, 429 (1988); see also East Hartford HousingAuthority v. Jackson, H-1056, No. SPH 81856 (September 21, 1995) (DiPentima, J.). In the latter case, Judge DiPentima had denied a motion to open, and, in the context of a motion for reconsideration of the motion to open, a motion to dismiss based on subject matter jurisdiction was filed. The latter motion was ruled on first, following the general rule stated above. If there is no subject matter jurisdiction, a motion to open should be granted, as a judgment without subject matter jurisdiction is invalid. Trichilo v. Trichilo, 190 Conn. 774, 777 (1983).
Subject matter jurisdiction is the power of the court to hear and decide a particular type of case. Plasil v. Tableman,223 Conn. 68, 80 (1992). In the case of statutorily created actions, such as summary process actions, the power of the court to hear the matter depends upon the satisfaction of several conditions precedent; that is, the plaintiff must be in a position to show that those conditions, including notice requirements, have been complied with in order to avail himself of the summary process remedies. "The purpose of summary process proceedings is to permit the landlord to recover possession of the premises upon termination of a lease without experiencing the delay, loss and expense to which he might be subjected under a common law cause of action. . . . [B]ecause of the summary nature of its remedy, the summary process statute must be narrowly construed and strictly followed. . . . The failure to comply with the statutory requirements deprives a court of jurisdiction to hear the summary process action." Bridgeport v. Barbour-Daniel Electronics, Inc.,16 Conn. App. 574, 581-82 (1988) (internal citations omitted). CT Page 708
Although the notice to quit is perhaps the most widely recognized prerequisite notice, courts have recognized that the notice required pursuant to § 47a-15, or Kapa[3] notice, is also a prerequisite to the maintenance of a summary process action, in those categories in which the notice is required. The "Kapa" "notice requirement has been interpreted to be separate from and preliminary to the maintenance of a summary process action pursuant to § 47a-23." Ossen v. Kreutzer, 19 Conn. App. 564,569 (1989). The jurisdictional notice requirement imposed by § 47a-15 has been formulated different ways. InMarrinan v. Hamer, 5 Conn. App. 101, 104 (1985), for example, it was stated that "the notice to quit was invalid because the requirements of § 47a-15 had not been complied with". "The plaintiff [i]s required to give the defendant notice pursuant to § 47a-15 before instituting a summary process action against her". Housing Authority v. Harris, 225 Conn. 600, 609 (1993).
The Connecticut Supreme Court discussed the requirements of the pretermination notice in some detail in Jefferson GardenAssociates v. Greene, 202 Conn. 128 (1987). The court stated that "before a landlord may pursue its statutory remedy of summary process under § 47a-23, the landlord must prove its compliance with all the applicable preconditions set by state and federal law for the termination of a lease." Id., 143. "In order to demonstrate its compliance with the notices required for a proper termination, a landlord must show that the notices given to the tenant apprised her of the information a tenant needs to protect herself against premature, discriminatory or arbitrary eviction." Id. The court went on to state, however, that the specificity required in each such notice was to be evaluated in context and in light of the purpose which the notice was to serve, and that "hypertechnical dissection of the wording of the notices" is not required. Id., 145.
In the circumstances of this case, then, the issue is whether from the face of the record there would appear to be substantial compliance with the notice provisions, that is, whether the notices were sufficient to apprise the defendant of the alleged violation and to give him the opportunity to correct a violation or to prepare a defense against the allegation. The notice to quit alleges "the reason of material noncompliance with the terms of the lease, more specifically, your Drug Free Contract and Attachment 3 and Paragraph 13C". The complaint repeats the same language; presumably, under the authority cited above, this allegation of material noncompliance requires a pretermination CT Page 709 notice pursuant to § 47a-15. The only other reference in the complaint to such a notice is paragraph 4, which alleges that "on January 6, 1997, the lessor gave notice pursuant to provisions of the lease of material noncompliance." Even construing the provision in a manner favorable to finding jurisdiction, I find that, in combination with the allegation that the quit date was January 20, 1997, much less than thirty days were provided for in the pretermination notice, and thus § 47a-15 could not have been complied with. At the hearing on the motion the pretermination notice was introduced as an exhibit, and it confirms that only eleven days were provided.[4]
Because there was not substantial compliance with §47a-15, the motion to open must be granted and the case must be dismissed for lack of subject matter jurisdiction.
Beach, J.