[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action brought by the East Hartford Housing Authority to evict from 9 Holmes Street, East Hartford, Tammy Lundy, Mary Hatcher and Timothy Washington. The operative allegation of the complaint is that Lundy and Hatcher used or allowed the premises to be used for the illegal sale of drugs. By special defense, the defendants Lundy and Hatcher allege that CT Page 6389 there was no "Kapa" notice as required by § 47a-15 of the General Statutes, and secondly that the defendants Lundy and Hatcher had no knowledge of Washington's criminal activity.
The following facts are found from the hearing conducted on October 18, 1996. In the end of October and beginning of November, 1995, Officer Bruce Nease and others of the East Hartford Police Department conducted an investigation of drug activity at Hockanum Park, the area in which the subject premises are located. Nease became aware of drug selling activity on the part of Timothy Washington; he was informed by confidential informants that Washington was selling drugs from 9 Holmes Street, the subject premises. A confidential informant made several controlled buys from Washington, one of which was actually made from 9 Holmes Street and during another buy, Washington was observed to enter 9 Holmes Street, apparently to retrieve the cocaine which he was selling. Information from the buys formed much of the basis for a search warrant for 9 Holmes Street. When the warrant was executed, both Lundy and Hatcher, the named heads of household on the lease (Lundy's minor children were also named on the lease; Hatcher is Lundy's mother), were present. Washington was not present. A "rock" of cocaine was found under the bed in Lundy's bedroom, which sometimes was shared by Washington during the general time frame. Apparently as part of a plea bargain, Washington pleaded guilty to possession of cocaine, and the remainder of charges, including possession of intent to sell and possession with intent to sell near a public housing project, were nolled. Neither Lundy nor Hatcher were charged with a crime, although a warrant was apparently presented to a prosecutor for Lundy's arrest and was turned down.
The defendants Lundy and Hatcher were served with a "notice of termination of rental agreement and notice to quit" on May 15, 1996; the notice, inter alia, stated that Lundy and Hatcher had used or allowed the premise to be used for the illegal sale of drugs and went on the state the drug charges against Washington. The plaintiff gave the tenants ten days within which to discuss the matter with the plaintiff, as required by federal law, and stated a quit date of June 18, 1996. There was no pre-termination"Kapa" notice. See Kapa Associates v. Flores, 35 Conn. Sup. 274
(1979).
It is reasonably clear from these facts that Washington used the premises for the illegal sale of drugs, and to the extent the effort is made to evict him, it is successful. It is almost as CT Page 6390 clear, however, that there is no substantial evidence to prove that Lundy or Hatcher used the premises for the sale of drugs. Thus I am constrained to find that, because "serious nuisance" is defined for our purposes as "using the premises for . . . the illegal sale of drugs"; § 47a-15 (D) of the General Statutes; neither Lundy nor Hatcher committed a serious nuisance, as the statutory language which specifically addresses the situation involving the illegal sale of drugs is quite specific.
As the evidence does not support the finding of a statutory serious nuisance, then, I am bound by our Supreme Court's holding in Housing Authority v. Harris, 225 Conn. 600 (1993), which is almost precisely on point. In Harris, the tenant's daughter, Mary Harris, Jr. (sic) was convicted of the sale of drugs. The tenant was served with a notice to quit with language very similar to the one served in the instant case. As in this case, there was noKapa notice, and no evidence that the tenant was directly engaged in selling drugs. Our Supreme Court held that in these circumstances, a pre-termination, or Kapa notice, was required in order to give the tenant the opportunity to correct the situation or to prepare her defense. Harris, supra, 606.
The plaintiff seems to suggest that because most of the requirements of the Kapa notice were included in the combination termination notice and notice to quit that it did provide, the requirements of § 47a-15 were met in any event. The Kapa
requirement, however, "`has been interpreted to be separate from and preliminary to the maintenance of a summary process action pursuant to [General Statutes] § 47a-23.' Ossen v. Kreutzer,19 Conn. App. 564, 569. . . ." Harris, supra, 605. The plaintiff additionally relies on a decision entitled Norwich HousingAuthority v. Pauley, 6 CSCR 4933. Although the reasoning ofPauley is not illogical it predates Harris by two years, and perhaps would have been decided differently in light of Harris.
Because Harris requires me to find that, in the circumstances of this case, there is no serious nuisance[1] as that is statutorily defined in §§ 47a-11 and 47a-15 and that, therefore, a pre-termination notice is required for a successful eviction, judgment may enter for the defendants Lundy and Hatcher.
Beach, J.